UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| RHONDA LEE MILLER, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No: 1:16-cv-503 |
|  | ) Judge Steger |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration,[1] | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

**I.   Introduction**

Plaintiff seeks judicial review of the denial by the Commissioner of the Social Security Administration ("SSA") of her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, 42 U.S.C. §§ 401-434, 1381-1383f. This review is conducted pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g). The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal therefrom to the Court of Appeals for the Sixth Circuit [Doc. 15]. For the reasons stated herein, Plaintiff's Motion for Judgment on the Pleadings [Doc. 16] shall be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 21] shall be **GRANTED**, and the decision of the Commissioner shall be **AFFIRMED**. Judgment in favor of the Defendant shall be entered.

---

[1] Carolyn W. Colvin was the Acting Commissioner of Social Security when this action was initiated. Nancy A. Berryhill has since assumed that role. Accordingly, the names have been changed. Fed. R. Civ. P. 25(d).

1

## II. Background

### A. Procedural History

Plaintiff applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, 42 U.S.C. §§ 401-434, 1381-1383f [Tr. 191-201]. Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner of the SSA. Plaintiff's claim was denied and she requested a hearing before an administrative law judge ("ALJ") [Tr. 134-36]. On November 25, 2015, following a hearing, the ALJ found that Plaintiff was not disabled [Tr. 19-37]. On October 20, 2016, SSA's Appeals Council denied Plaintiff's request for review [Tr. 1-7]. Thus, Plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review. Plaintiff filed a Complaint in the district court on January 9, 2017. Subsequently, Plaintiff filed a motion for judgment on the administrative record and the Commissioner filed a motion for summary judgment. Both motions are ripe for review.

### B. The ALJ's Findings

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since July 1, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, carpal tunnel syndrome, diabetes mellitus, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,

416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform unskilled light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she can frequently use both her hands for work, she can occasionally use ladders, ropes, and scaffolds at work, and she has the ability to do work involving gross vision only unless she wears glasses (which are presumed to eliminate this issue).

6. The claimant is capable of performing past relevant work as a cashier at a convenience store. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2013, through the date of this decision (20 CFR 404.1520(1) and 416.920(f)).

[Tr. 24-32].

### C. Relevant Facts

#### 1. Plaintiff's Age, Education, and Past Work Experience

At the time of the hearing before the ALJ on November 4, 2015, Plaintiff was 54 years old [Tr. 46]. She was 52 years old at the time of her alleged onset of disability on July 1, 2013. She has past relevant work as an assistant manager of a convenience store, a buffet cook, and a cashier at a convenience store/gas station [Tr. 66-67, 75, 48]. She completed the eighth grade and subsequently earned a General Education Development high school equivalency diploma [Tr. 46].

#### 2. Plaintiff's Testimony and Medical History

The parties and the ALJ have summarized and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters as relevant to the analysis of the parties' arguments.

3

### III. Analysis

#### A. Standard of Review

To establish disability under the Social Security Act, a claimant must establish she is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity she is not disabled; (2) if the claimant does not have a severe impairment she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment she is disabled; (4) if the claimant is capable of returning to work she has done in the past she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that she cannot return to her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which she can perform considering her age, education and work experience. *Richardson v. Sec'y, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner

are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389 (1971); *Landsaw v. Sec'y, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

The court may consider any evidence in the record, regardless of whether the ALJ cited it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, for purposes of substantial evidence review, the court may not consider any evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is not obligated to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

**B. Discussion**

Plaintiff challenges the ALJ's determination that she was not under a disability, as

defined by the Act, from July 1, 2013, the alleged onset date. She presents three issues for review. These issues will be addressed in the order in which they were presented.

> **1. Whether the ALJ erred by failing to properly consider all of Plaintiff's impairments and by failing to provide sufficient reasons for not finding those impairments to be severe**

Plaintiff argues that, in addition to the impairments the ALJ found to be severe – degenerative disc disease of the lumbar spine ("DDD"), carpal tunnel syndrome, diabetes mellitus, and obesity – the record also contains evidence of anxiety and depressive disorders. She argues that the ALJ erred by failing to find these additional impairments to be severe and by failing to state why he did not do so. Plaintiff argues that her anxiety and depressive disorders cause additional limitations that affect her ability to perform at the residual functional capacity ("RFC") assigned by the ALJ. Specifically, she notes a medical source statement from Nurse Practitioner Trena Lawson, who noted marked limitations in various work-related functions and stated that Plaintiff had been absent from work four days per month and that her conditions would cause her to be off-task for 25 percent or more of a normal work day. Plaintiff asserts that her mental impairments were diagnosed and documented in the record, and that they caused more than a slight abnormality in her ability to function. Plaintiff asserts that the ALJ's failure to consider properly her anxiety and depressive disorder was insufficient and unjustifiable.

In her motion for summary judgment, the Commissioner responds as follows:

- Substantial evidence supports the ALJ's conclusions because Plaintiff failed to demonstrate that her anxiety and depressive disorder were severe.

- First, that Plaintiff did not allege, in her application, disability based on anxiety, depression, or any other mental problem.

6

- The ALJ nevertheless considered Plaintiff's complaints of anxiety and depression, but that Plaintiff failed to establish that her symptoms significantly limited her ability to perform basic work activities.

- The ALJ properly considered the "paragraph B" criteria (i.e., daily living, social functioning, concentration, persistence or pace, and episodes of decompensation) as part of his analysis of Plaintiff's mental impairments. In doing so, he found, based on those criteria, the objective evidence, and Plaintiff's treatment history, that Plaintiff was diagnosed with medically determinable impairments, but that she failed to demonstrate those impairments resulted in more than a minimal limitation on her work-related abilities.

In determining disability, the ALJ must consider, in relevant part, whether a claimant has a medically determinable impairment, or a combination of impairments, that qualify as severe. 20 C.F.R. § 404.1520(c). Regulations provide that an impairment is severe if it has "more than a minimal effect" on the claimant's ability to do basic work activities. SSR 96-3p. By contrast, it is non-severe if it does not significantly limit a claimant's ability to do basic work activities. *Id*. Basic work activities are the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 1522(b). Examples include understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. *Id*. The Sixth Circuit has held that the determination of whether an impairment is "severe" is a "*de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

In his decision, the ALJ found that Plaintiff had degenerative disc disease of the lumbar spine ("DDD"), carpal tunnel syndrome, diabetes mellitus, and obesity, and that all of those impairments were severe [Tr. 24]. The ALJ also noted that the record indicated Plaintiff had a history of visual difficulty and a history of treatment for an episode of acute renal failure, but that neither of these imposed more than minimal, if any, limitation of Plaintiff's ability to work for

7

any 12-month period [Tr. 25]; *see* SSR 96-3p. The ALJ then determined that none of Plaintiff's impairments, singly or in combination, met the criteria for a listing under 20 C.F.R. Part 404, Subpart P, Appendix I, noting that he had considered Plaintiff's mental impairments as part of his assessment [Tr. 25]. Specifically, the ALJ found that Plaintiff exhibited no more than mild limitation in activities of daily living, social functioning, and concentration, persistence, and pace; and she had no episodes of decompensation [*Id.*].

The ALJ determined that, as to daily activities, Plaintiff had no more than mild limitation, noting that Plaintiff indicated she could prepare simple meals and perform household chores such as laundry and vacuuming [Tr. 26, 253-55, 275-76]. Plaintiff also indicated that she rarely shaves or puts her hair up because of pain in her hands, and that she sometimes has difficult fastening buttons or showering, but that she can drive a car and shop for clothes and groceries [Tr. 253-55, 275-77]. The ALJ determined that Plaintiff had no more than mild limitation in social functioning based on Plaintiff's statements that she gets along well with others and can shop in stores; her appropriate behavior during the hearing; and indications in the record that she has no difficulty getting along with multiple treating sources [Tr. 26, 277-80; *also see generally* tr. 374-86, 427-570, 578, 583, 599]. The ALJ determined that Plaintiff had mild, if any, difficulties with concentration, persistence, and pace, noting that she reported no difficulty in following directions, managing her finances, or adapting to changes in a routine setting, and that she enjoys playing games online [Tr. 277-80, 401].

The ALJ also detailed portions of the medical record related to Plaintiff's mental impairments [Tr. 26-27]. Specifically, the ALJ noted that consultative examiner Kimberlee Berry-Sawyer, Ph.D., found symptoms of depression, including sadness and excessive worry, but

8

also that, despite a somewhat depressed and anxious mood, Plaintiff's mental status examination yielded normal speech, logical thought processes, and no deficits in concentration [Tr. 26, 400-02]. The ALJ noted Berry-Sawyer's finding of dysthymic and anxiety disorder proffering mild limitations in concentration, persistence, and pace, and in adaptation, and moderate limitations in social functioning [*Id.*]. However, the ALJ determined that the evidence failed to support any more than mild social restrictions, and thus, he afforded only some weight to the assessment [Tr. 26].

The ALJ took note of Plaintiff's history of treatment beginning in October 2012 at the Helen Ross McNabb Mental Health Center, where she was diagnosed with depression and anxiety and prescribed psychotropic medication [Tr. 26, 368-86]. He specifically noted a January 2013 visit in which Plaintiff reported feeling less stressed, more stable, and able to work better, and follow-up visits in 2013 and January 2014 indicating continuing improvements [Tr. 26, 376, 378, 380, 553-54]. The ALJ noted that treatment records from March 2014 indicated Plaintiff returned to the center complaining of excessive tearfulness, but that her reported goals were to "look at 2 new jobs a week." [Tr. 26,543-46]. He also noted a 2015 report[2] reflecting an assessment of normal mood, speech, and behavior, appropriate affect, logical thought processes, and good concentration [Tr. 26, 421].

The ALJ also noted Trena Lawson's medical source statement referencing "marked" limitations in Plaintiff's social functioning, adaptation, and concentration, persistence, and pace [Tr. 26, 615-17]. The ALJ stated that he had considered the assessment but gave it minimal

---

[2] The ALJ stated that the report was dated October 2, 2015. However, the document indicates the notes are from an office visit on September 17, 2015. The October 2 date at the top of the document appears to be a transmittal date.

weight because: (1) a nurse practitioner was not an "acceptable medical source" under the relevant regulations; and (2) Ms. Lawson's opinion was inconsistent with and unsupported by the evidence of record as a whole [Tr. 26].

The ALJ determined, based on the above, that Plaintiff's depression and anxiety were medically determinable mental impairments, but that they resulted in no more than minimal limitation in her ability to perform the basic mental demands of work activity, and thus, they were non-severe [Tr. 27]. The ALJ noted that he had given great weight to determinations by state agency mental health consultants, whose findings comported with the ALJ's, because their opinions were consistent with and supported by the evidence of record as a whole [Tr. 27, 105-18]. The ALJ added that, based on possible side effects of prescribed pain medications, Plaintiff may experience intermittent moderate limitations in concentration, persistence, and pace, and found that, as a result, she was limited to unskilled work [Tr. 27].

Plaintiff argues that the ALJ failed to provide reasons for finding that her mental impairments were non-severe; however, as noted above, the ALJ made detailed findings regarding Plaintiff's depression and anxiety. He took note of consultative examinations, Plaintiff's history of treatment, determinations by state agency consultants, and Ms. Lawson's medical source statement. In doing so, the ALJ concluded that, based on the record as a whole, Plaintiff's mental impairments resulted in no more than minimal limitation in her ability to perform the basic mental demands of work activity.

Moreover, substantial evidence supports the ALJ's determination. Ms. Lawson's medical source statement finds more serious limitations caused by Plaintiff's mental impairments; however, the bulk of the record, including extensive treatment records from the McNabb Center,

support that Plaintiff's anxiety and depression were linked to external factors. More specifically, those factors involved worries about her son and her own employment situation. Ultimately, the record establishes that Plaintiff's alleged mental impairments caused minimal, if any, limitation [*See, e.g.*, tr. 419, 427, 429, 440, 466, 489-90, 493, 503, 504-05, and 508-09]. For those reasons, Plaintiff's argument fails.

### 2. Whether the ALJ erred by not giving proper weight to the opinion of the Plaintiff's treating source

Plaintiff argues that the ALJ should have strongly considered Ms. Lawson's findings in the medical source statement based on her specialized knowledge of Plaintiff's conditions. She asserts that Ms. Lawson's Medical Source Statement supports Plaintiff's claim for benefits because Ms. Lawson documented marked limitations in Plaintiff's ability to respond appropriately to the general public, co-workers, and supervisors, as well as to ordinary work situations, changes in her routine work setting, and other areas of work-related functioning. Plaintiff asserts that the ALJ failed to give proper weight to Ms. Lawson's opinion as a treating source and failed to provide good reasons for doing so.

The Commissioner responds that:

- The ALJ expressly considered Ms. Lawson's findings and properly afforded them minimal weight in light of other, conflicting medical opinions.

- The ALJ was not required to give Ms. Lawson's opinion controlling weight because, under the regulations in effect at that time, nurse practitioners did not constitute "acceptable medical sources."

- Based on the record, it appears that Ms. Lawson saw Plaintiff only once, which would further disqualify her as a treating source.

- The ALJ found Ms. Lawson's opinion inconsistent with, and unsupported by, the record as a whole, and Plaintiff failed to cite any evidence in the record supporting Ms. Lawson's statements regarding her mental limitations.

- The assessments of state agency mental health consultants who reviewed Plaintiff's file on reconsideration were consistent with the record as a whole and support the ALJ's determination.

- The ALJ expressly considered Plaintiff's subjective allegations and the evidence relating to her mental complaints. He appropriately concluded that Plaintiff failed to show that her mental impairments significantly limited her ability to perform work-related activities, but limited her RFC to unskilled work based on a finding that she might experience moderate limitations in concentration, persistence, and pace as a result of pain medications.

In a reply brief, Plaintiff takes issue with the Commissioner's assertion that Ms. Lawson's opinion should be given less weight because she only saw Plaintiff once, noting that the consultative examiners examined but did not treat Plaintiff, and state agency medical consultants neither met nor examined her.

Social Security regulations provide that the ALJ is required to evaluate every medical opinion received using the following factors:

> (1) the examining relationship, with more weight accorded to a physician who has examined the claimant than one who has not;
>
> (2) the treatment relationship, including the length of treatment of the claimant, the frequency of examination, and the nature and extent of the treatment relationship;
>
> (3) the support of the physician's opinion afforded by the medical evidence of record;
>
> (4) the consistency of the opinion with the record as a whole;
>
> (5) the specialization of the physician, with more weight accorded to a specialist than to a non-specialist; and

> (6) other factors, including the amount of understanding of the Commissioner's disability programs and their evidentiary requirements, and the extent to which an acceptable medical source is familiar with other information in the case record.

20 C.F.R. § 404.1527(c).

The regulations state that the medical opinion of a treating source regarding the nature and severity of an impairment will have controlling weight if the ALJ finds that it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *Id*. § 404.1527(c)(2). If the medical source is a treating medical provider, the regulations state that the ALJ will provide "good reasons" in his decision for the weight given to a treating source's opinion." *Id*.

In his decision, the ALJ specifically took note of Ms. Lawson's findings of "marked" limitations in Plaintiff's social functioning and adaptation, and in her concentration, persistence, and pace [Tr. 27, 615-17]. The ALJ stated that he had considered Ms. Lawson's assessment of Plaintiff's mental functioning, but that he gave it minimal weight because: (1) as a nurse practitioner, Ms. Lawson was not an "acceptable medical source" under the regulations; and (2) her opinion was inconsistent with and unsupported by the evidence of record as a whole [Tr. 27]. Under the regulations in place at the time of the ALJ's decision, only "acceptable medical sources" may provide medical opinions or be considered treating sources whose medical opinions may be entitled to controlling weight. SSR 06-03p.[3] A nurse practitioner is identified

---

[3] SSR 06-03p was rescinded effective March 27, 2017; however, it was still in place at the time of the ALJ's decision in this case. Although the ALJ cites in his decision to SSR 06-06p, this appears to be a scrivener's error.

13

as a medical source that is <u>not</u> an acceptable medical source. *Id*. Accordingly, the ALJ was not required to give Ms. Lawson's opinion controlling weight. *See* 20 C.F.R. § 404.1527(c)(2).

Although Plaintiff argues that Ms. Lawson's opinion deserved greater weight because of her specialized knowledge of Plaintiff's symptoms, nearly all of the treatment records from the McNabb Center were completed by other nurse practitioners or social workers [*See generally* Tr. 366-87, 419-570]. Moreover, Plaintiff cites to nothing in the record to support Ms. Lawson's statement or to provide additional support for her contention that Plaintiff's mental impairments were severe. By contrast, substantial evidence supports the ALJ's determination that Ms. Lawson's opinion reflects a level of severity not suggested by the record as a whole. For those reasons, the Court finds that Plaintiff's argument is without merit.

### 3. Whether the ALJ erred by failing to include a function-by-function assessment in the RFC assessment

Plaintiff argues that the ALJ failed to follow SSR 96-8p when he did not articulate separately Plaintiff's ability to perform each of the seven strength demands in his decision. The strength demands are sitting, standing, walking, lifting, carrying, pushing, and pulling.

The Commissioner responds that:

- The ALJ properly determined Plaintiff's RFC based on a thorough and careful consideration of the record as a whole.

- Although Plaintiff claims the ALJ failed to include a function-by-function analysis of each of the seven strength demands, she does not contest the ALJ's evaluation of the evidence relating to her physical impairments, nor does she suggest that the record supported more restrictive physical limitations than those noted in her RFC.

- The regulations require the ALJ to consider each function separately, but they do not require him to discuss each function separately in his opinion.

14

- The ALJ's detailed findings demonstrate that he conducted a function-by-function evaluation.

RFC is an "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. An RFC assessment considers "only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." *Id*. The RFC assessment first must "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Id*. Subsequently, the RFC may be expressed in terms of exertional levels of work, *i.e.*, sedentary or light. *Id*.

In assessing physical abilities to determine a claimant's RFC, the Code of Federal Regulations provides:

> [W]e first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b). A function-by-function evaluation to determine a claimant's RFC is required by SSR 96–8p; however, this Circuit's case law clarifies that the rule merely requires the ALJ to consider each function separately. It does not require the ALJ to discuss each function separately in a written decision. *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002); SSR 96-8p.

Plaintiff asserts that the ALJ failed to conduct a function-by-function analysis of her abilities. She does not state how this alleged failure altered the ALJ's findings. More specifically, she fails to allege or demonstrate that the ALJ failed to account for any substantial limitations in the determination of Plaintiff's RFC. Case precedent makes it clear that, although a function-by-function assessment is required as part of an RFC assessment, the ALJ is not required to discuss each function in his decision. *See Delgado*, 30 F. App'x at 547.

The ALJ determined that, with her impairments, Plaintiff had the RFC to perform light unskilled work, pursuant to 20 CFR §§ 404.1567(b) and 416.967(b), except that she can frequently use both her hands for work; she can occasionally use ladders, ropes, and scaffolds at work; and she has the ability to do work involving gross vision if she wears glasses [Tr. 28]. The ALJ cited to SSR 96-8p, noting that Plaintiff's RFC must be evaluated in terms of work-related functions and that, in relevant part, "[e]xertional capacity addresses an individual's ability to sit, stand, walk, lift, carry, push and pull" [Tr. 30]. He stated that on review, he accepted that Plaintiff may experience some intermittent discomfort from her impairments which would restrict her to lifting no more than 20 pounds occasionally and 10 pounds frequently, and to standing and/or walking 6 hours and sitting 6 hours in an 8-hour work day [Tr. 30]. The ALJ further stated that the record revealed "no significant deficiency in the claimant's ability to perform the work-related activities as required by this level of light work activity" [Tr. 30]. In support of his findings, the ALJ detailed Plaintiff's testimony and medical history, as contained in the record [Tr. 28-31]. Thus, the record supports that the ALJ considered the seven strength demands in rendering his decision.

Moreover, substantial evidence supports the ALJ's conclusion that Plaintiff is able to perform light work with the restrictions noted in the decision. More specifically, the ALJ made the following observations:

- Plaintiff testified that her chronic low back pain makes it difficult for her to sit for prolonged periods; that she experiences pain and numbness in her hands that causes her to drop things and makes it difficult to do things like open jars; that she has persistent episodes of insomnia; and that her son performs most of the household chores [Tr. 28, 47, 51-56]. However, the ALJ found that, after considering the evidence, Plaintiff's medically determinable impairments could reasonably expect to cause the alleged symptoms, but Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not entirely credible [Tr. 28]

- The record failed to support Plaintiff's allegation of a disabling lumbar impairment, noting that treatment records from William B. Findley M.D., a primary care treating physician, included x-rays reflecting degenerative disc disease, but with no acute fracture or subluxation [Tr. 28, 312, 324]. Moreover, prescribed pain medication improved her symptoms [*id.*]. In a follow-up appointment in March 2013, Plaintiff reported the medications were helping the "quality of her life" [Tr. 28, 340].

- The ALJ also considered a consultative examination by Thomas F. Mullady M.D., in September 2013, in which Plaintiff reported she was continuing to work part-time as a restaurant cook and had low-back and wrist pain [Tr. 28-29, 354]. Plaintiff was diagnosed with carpal tunnel syndrome, with moderate decreases in manual dexterity, but a physical examination also demonstrated no significant abnormalities, with normal bilateral grip strength [Tr. 29, 353-54]. An examination of Plaintiff's lumbar spine revealed decreased range of motion with positive straight leg raises, but Plaintiff was observed ambulating with a normal gait [Tr. 29, 353]. Dr. Mullady determined that Plaintiff was limited to lifting 10 pounds occasionally, and sitting 6 hours and standing/walking 2 hours during an 8-hour workday [Tr. 29, 354]. The ALJ gave some weight to Dr. Mullady's determination, but noted that Dr. Mullady's own clinical findings and the balance of the record did not support such restrictive limitations in lifting, standing, and walking [Tr. 29].

- In the examination, Plaintiff was assessed to be 5'2" in height. She weighed more than 200 pounds, resulting in a diagnosis of obesity. The ALJ stated that he considered that diagnosis at all steps of the evaluation process, including the RFC [Tr. 29, 354].

17

- A treatment record from Memorial North Shore Health Center indicated that Plaintiff reported wrist pain, but also that she was continuing to perform work activity involving heavy lifting [Tr. 29, 356]. A physical examination revealed deceased range of motion and inflammation in the left wrist. Treating sources prescribed wrist splints, but no limitations were noted, and x-rays of Plaintiff's wrists were negative [Tr. 29, 356, 404, 410-13].

- Treating sources administered steroid injections to the left wrist in November 2014, but again proffered no limitations or restrictions [Tr. 29, 410].

- The record also indicates Plaintiff was diagnosed with diabetes, although no complications were specified [Tr. 29, 406-15, 576].

- Plaintiff had a history of pain management therapy with Consultants in Pain Management. Plaintiff presented there in April 2014 with complaints of pain in her lower back, right hip, and tailbone [Tr. 29, 610]. A physical examination revealed no significant abnormalities, and treating sources assessed that Plaintiff was in no acute distress and ambulated with a normal gait [Tr. 29, 613]. Treating sources prescribed pain medications, and Plaintiff reported she was working with a temporary agency [Tr. 29, 610, 613-14].

- Follow-up visits to Consultants in Pain Management generally indicate that Plaintiff's pain was well controlled with medication and there was no worsening of her symptoms [Tr. 571-608].

- Plaintiff worked subsequent to the alleged onset date and, while the work did not qualify as substantial gainful activity, it did indicate that Plaintiff's daily activities were "somewhat greater than generally reported" [Tr. 30]. Because there was no evidence indicating her symptoms grew worse subsequent to her work activity, it was unlikely her impairments would preclude current work activity [*Id.*].

- Plaintiff's subjective allegations were unsupported by the record based on: (1) a lack of objective and laboratory medical findings to support that the impairments could reasonably be expected to cause the subjective complaints; (2) the relatively mild to moderate pathology documented by clinical examinations; and (3) Plaintiff's reported activities of daily living [*Id.*].

- The ALJ considered the opinions of expert consulting physicians who determined that Plaintiff remained capable of performing medium work [Tr. 31].

Plaintiff raises no argument contesting the ALJ's substantive findings in relation to her RFC. Accordingly, this claim fails.

### III. Conclusion

Having carefully reviewed the administrative record and the parties' briefs filed in support of their respective motions, the Plaintiff's Motion for Judgment on the Pleadings [Doc. 16] shall be **DENIED**; the Commissioner's Motion for Summary Judgment [Doc. 21] shall be **GRANTED**; and the decision of the ALJ shall be **AFFIRMED**. Judgment shall be entered in favor of the Defendant.

**ENTER**.

s\ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE